and Mr. Rosen. Good morning. You and Ms. Boyle are a regular team, a talent team. It saves time and trouble of coming back again and again to do this with both of us. Good afternoon, Your Honor. It's now afternoon. It is our position that the trial court abused its discretion. The trial court had clear knowledge of Dean's procedure that Justice Roberts laid out in the case of Dean and did not follow it. The trial counsel had advised the trial court of Dean's existence and advised, I think, in the written memorandum and in court that they should be packaged together. What the court did was basically, and I understand the court, with respect to the sentencing guidelines for the predicate offense, went under the guidelines. I know this government's going to make an issue about that, and I imagine, I anticipate the court's going to make an issue about that. They did go below, but the court did not follow the edicts of Dean, which Justice Roberts reversed and re-ran it back to the trial court. Is there anything in Dean that requires the district court to explicitly say that it was considering the sentence in totality? I anticipate that. I think the fact that the court, Justice Roberts remanded the matter back to the district court for procedures consistent with the opinion, I think was his exact language. After he basically laid out the language in Dean that there's nothing in these requirements prevents a sentencing court from considering a mandatory minimum sentence or an I-24C when calculating an appropriate sentence with predicate offense. Then immediately thereafter, Justice Roberts reversed the court of Eighth Circuit and remanded the matter for further proceedings consistent. I think that that is what we're looking at in terms of how that would be approached, Your Honor. We have this unpublished opinion, United States v. Wilson, from a few years ago. In that case, we wrote, nowhere does the court say it was bound to apply the career offender guideline in the sense of an obligation to oppose a sentence within that range. The court simply followed the rule that every sentence must begin with the accurate calculation of the advisory guideline range. That's kind of exactly what happened here. Maybe we need to publish something that says you don't have to explicitly reference Dean, but I just wonder if there's a distinction between, if we were in a world where the court said, I can do this, I can do this, I can do this, but I declined to do all those things, in order to affirm the district court on sentencing to help establish the district court knew what it was doing. Boy, that would be a long list, and it would get longer and longer and longer every term. Well, the thing is that in this case, Judge Mim never even discussed Dean. He never talked about him. Isn't it clear, though, that he knew he could consider them together by the fact that he went down? He downward departed on the first part, or he gave a lower sentence on the first part? He didn't go within the guidelines? I don't know. It seems to me that that's an implicit acknowledgment that he— I don't believe so, because he didn't word it that way. He said, I'm giving 60 months on the predicate offense, and then just tacking on the 60 months for the 924C. So he never really addressed that. He also, as I indicated in my brief, didn't fully address all the mitigating factors that he should have done. I think he didn't address— You know, based on the record, what would you rank as Mr. Smith's top two or three arguments in mitigation? His rank? I think that he—I didn't rank them. I had a number here. He was a lack of a violent history. The firearm offenses he had previously were merely possessory. He'd been previously shot. He could not take classes. Dandle is a dangerous area. I think that came out during the trial. The two prior offenses that had been involved in this series of offenses that he pled guilty to had no evidence of firearm possession. There's a whole number of issues there that I think when you look at—like I said, Your Honor, I didn't rank them. I just think that they are all relevant. And I think Vizcarra talks about failures who consider relevant mitigating factors as an abuse of discretion. And I think that there is nothing that mandates that the court should consider Dean, but I think there's also nothing that says that the court should not consider Dean. And I think when you look at that Justice Roberts specifically remanded the matter back to the district court for considerations based upon Dean, I think that that basically leads to his understanding and his communication that Dean is to be considered. And like I said, Judge Mim didn't even talk about it. He didn't say, I'm considering Dean, I'm not considering Dean, I'm not doing anything with Dean. He just sort of did the 60 months, figured that out, and then just piggybacked on it. And I think when you look at the total of what Mr. Smith was deserved, I think it was in line. When you look at the 3553A, which I think basically Dean is relying upon now, as opposed to just basically doing the guidelines after the case law, was the seven years that trial counsel asked for, which was basically what was still two years for the predicate offense. He had the drugs. I think there were small amounts of drugs, very small amounts of drugs. He was basically using this to basically keep himself alive. Those sorts of factors were going on. But I think when you look at Dean, and also Dean basically, Judge Roberts said, nothing in the language of 924C prevents a district court from imposing a 30-year mandatory minimum sentence under 924C, and a one-day sentence for the predicate violent or drug trafficking crime, provided those terms run one after another. That's page 498. Ms. Rosen, you've argued that the court didn't consider the, I'll just take two examples, the small drug quantity or the carrying of the gun for protection. But the court specifically stated defense counsel has noted the small amounts of drugs involved. It was indeed fentanyl, which is very dangerous, and I'm troubled by it. And then with respect to the carrying the gun for protection, the court acknowledged that the gun was there to protect him and his drugs, and that it may also be true that Danville is a dangerous place. But the court found that Smith had contributed to the danger and wasn't persuaded by that. So I don't understand how you can argue the court didn't consider that. I understand you think the court should have weighed it differently, but that's not for us to decide. No, and I understand. I think the court did consider that, but I think the court also did not consider some of the other factors. I indicated the lack of violent history. He was not the target in this thing. Mr. Smith, they were interrogating him about his other people involved. They were basically using him to try to get along. He was cooperative upon arrest, no history of violence. I think there are other factors that the court did not consider that I think should have been considered and I think would have if the judge had done this correctly, as we believe, following Justice Roberts' opinion on this, would have basically given the seven years, I think, which is what was appropriate, but by basically doing what he did, basically trying to give him a favor by saying I'm not going to give you the 92 to whatever it was, 110 months on the front end of the predicate, instead of giving you 60 months on the predicate and giving you a break but then tacking on the 60 months with a 924C really didn't do what it was supposed to do based upon the case law that I've got here, Your Honors. Thank you. If there are no other questions, I'll reserve my time for rebuttal. Thank you so much. Good morning again, Your Honors. May it please the Court, Counsel. My name is Catherine Boyle on behalf of the United States. Judge Rovner, you alluded to, during my opposing counsel's argument, the number of issues raised regarding the sentencing, and I think what we first want to do here is pull back and acknowledge that the overall picture in this case is of a district court, an experienced district court judge, who took great care with all of Mr. Smith's arguments and in going over his objections and the guidelines. Well, as I read the sentencing transcript, there were. several arguments in mitigation that were not addressed explicitly and, you know, absent confirmation that the judges addressed a non-routine mitigation argument. Shouldn't we remand in these cases if we don't have confidence that an argument was really considered? Well, Your Honor, the district court is not required to address arguments that are stock arguments or frivolous. And in this case, I didn't, you know, of course not. I'm talking about the non-routine mitigation arguments. Certainly, Your Honor. And would it be most helpful for me to go through the arguments Mr. Smith has raised, or is there any one in particular you'd like me to address? Well, why don't you do that, and let's see where we come out. Sure, Your Honor. So following this fulsome explanation of its sentence, Mr. Smith has raised the argument that the district court failed to address a variety of issues during sentencing. He first argues that the district court failed to consider the small-scale nature of his drug dealing. As Judge Saney pointed out, the district court directly addressed that. The court said, however, it was concerned that fentanyl was one of the drugs at issue, and it was more concerned that this drug dealing was occurring with a loaded firearm. So the court emphasized that it was really the combination of the loaded firearm and narcotics, as opposed to just the narcotics themselves. Criminal history. The court went over Mr. Smith's criminal history very carefully. The court, first of all, wasn't even required to address Mr. Smith's argument that his criminal history was nonviolent. That's more or less a stock argument that it's over-representative. But in any case, the court did address his criminal history. It went through each of Mr. Smith's priors. It actually dismissed the importance, in terms of any violence potential, of the juvenile conviction for explosives, and it said it was most troubled by this repeated drug trafficking and firearm possession as a felon. The court also specifically addressed Mr. Smith's argument that he just had the firearm for possession against the dangers of Danville. First of all, that ignores the idea that the jury here had already decided Mr. Smith had this firearm in furtherance of a drug trafficking crime, so that's sort of an initial step. But second of all, the court did also squarely address this during sentencing. The court believed that Mr. Smith had a gun for protection, but said that was partly because he was walking around carrying drugs and cash, and said that somebody might target him for those. So it is people like Mr. Smith who are making cities like Danville more dangerous by walking around and dealing drugs with a loaded firearm with a large-capacity magazine. The court did not discuss in depth this argument that the base offense level was unfairly elevated due to Mr. Smith's possession of that large-capacity magazine. That argument was without merit. The guidelines are very clear on this point, and Mr. Smith tried to make a big deal about the idea that this magazine was standard issue on the particular weapon that he had. But the problem with that is there's a lot of weapons. First of all, Mr. Smith is a felon and shouldn't have a weapon at all, but there's also, as opposed to his specific issue with this type of weapon, it's not the only weapon around, and the fact that it was standard issue, really there's no reason not to apply the guidelines in this case for that reason. Mr. Smith also says the court failed to address the fact that there was no evidence he had a firearm in prior drug deals. I don't think the court needed to address that. Nobody ever said that Mr. Smith did have a firearm during prior drug deals. He was only charged with drug offenses for the 2018 and 2019 controlled buys, so there's no evidence here that anybody even had that on their mind at the time. Mr. Smith argues that the court failed to discuss his cooperation during his arrest. First of all, you have to think about what is meant here by cooperation. Mr. Smith made a partial admission regarding his drug trafficking, but it certainly wasn't complete or fully honest, and he didn't start providing additional information regarding other prosecutions. He just made a partial admission regarding his own guilty conduct. Did he raise that at sentencing? I didn't think he raised his argued cooperation as mitigation during sentencing. I don't think so. There's a chance that he said something very brief along the lines of he had immediately. I don't recall it immediately, Your Honor. Okay. Something very brief along the lines of he had admitted his conduct, but that would also go more towards his guilty plea to four of the five counts, I think. I think that was more of a focus. Mr. Smith noted family support. This court has described that as a stock argument that is common to many defendants, and the court did briefly note that it had read his letters of family support. I don't believe anything more was needed on that count. Mr. Smith also said that the court needed to consider that he was ineligible for certain recidivism reduction programs. That is also a stock argument that would apply to many defendants. Certain 924C defendants, for instance, are not eligible for certain First Step Act programs. But the court didn't ignore the issue of things he hoped that Mr. Smith would do in prison. In fact, the court expressed hope that Mr. Smith would take educational and vocational classes, but he can't. He can't take courses that he would benefit by here. That's the problem. I hope you'll take advantage, but the sentence is such that he is not going to be able to. So that is part of the problem, isn't it? Well, my understanding is that Mr. Smith was eligible for some classes. I would want to double-check with BOP to make sure I'm stating this accurately, but I don't believe having a 924C conviction precludes you from eligibility for any class. I think part of the issue is whether you can get good time credits for your participation in certain classes, even more so than whether you can participate. I thought that was the issue, unless something has changed. I didn't think a 924C conviction precluded you from taking educational or vocational classes, that it was just this credit. Yes, Your Honor. I think it's precluded from participation as a person getting good time credits in the program. Right, but not in the actual classes themselves. That's my understanding, although I would want to confirm, but I believe that's correct. And then I think as for the last point that defense counsel was making today, there's ample evidence from this case that the court was aware of its discretion under Dean. As Judge Zainib noted, I think it's implicit in the fact that the court varied significantly below the guidelines and posed a sentence of 60 months on the four non-924C counts and an additional consecutive 60 months on the 924C count. And it said that that was sufficient but not greater than necessary, which I believe shows that the court here was considering that it didn't express any regret and say, oh, I'm bound by this consecutive 60-month sentence and this feels too long. It said this is the right sentence, and it did vary downward to get to that sentence, which suggests an awareness of discretion under Dean. And that also followed a thoughtful consideration of the sentencing factors. It's also important here, Smith acknowledged in district court briefing that the court did know its discretion under Dean and the court was reminded of its discretion under Dean by Mr. Smith at the sentencing. So I really think all the evidence here shows this is an experienced district court judge who conducted a careful sentencing. Many, many arguments were raised at sentencing, and the court addressed every argument that needed to be addressed and gave a fulsome explanation of its below-guidelines sentence. And Mr. Smith's primary argument that the sentence was substantively unreasonable is based on the idea that the court made these procedural errors. So it's the government's position that no procedural errors were made and the below-guidelines sentence was substantively reasonable, and there's nearly a rebuttable presumption that that's the case. If the court has no further questions, the government will ask that the court affirm and rest on the arguments, and it's free. Thank you. Thank you, Your Honors. Thank you, Mr. Rosen. Please give him his full two minutes. Thank you, Your Honor. Thank you, Judge Rogler. I think there was a good deal of clearly judgment. I did consider a number of the factors that were raised by defense counsel, but did not consider my client's family support. His family's criminal history is no aggressive behavior against individuals. His history of being a small-time drug dealer for basically just to survive, I think that I can't remember what my counsel put in the memorandum, but I did review the sentencing transcript, and there was no mention about his cooperation, but that's still something that. But did you raise that? I didn't do the trial. Did whomever was representing him at sentencing raise it? Not at the sentencing hearing, but I don't recall. So then how could the court have addressed that as a mitigating factor if it wasn't raised as one? I can't remember what was in the memorandum. I didn't see anything in there. Well, then I will concede that there wasn't, but the court could have, but I see where the court's coming from, and I don't know about this being an ability to obtain. I understand where the court's coming from with this good credit. All I do remember was in the transcript was the government never got up and said, that's not true, he can't take those classes. Nothing like that was ever said by the government at that point in time. So I'm sure the court is aware. That's all I can recite. Is it your position that he can't take classes at all because of the 924C conviction? I'm relying upon what was at the hearing, which is what counsel said, which was, once again, unrebutted. The government had the opportunity to get up there and say, that's not true, he can do it, and they never did that. Nobody ever did that, and Judge Mim never considered that. And so that's where we're going. Although he knew of his discretion under Dean, I don't believe he followed it. I think that he basically gave him credit under 93553 based upon the guidelines for the predicate offense, gave him the 60 months, but just piggyback that on to the additional 60 months. So I think he did abuse his discretion. Thank you, Your Honor. All right. Wait. I have to thank you again. We have to doubly thank you. Thank you, Judge. Both of you for making the trip and for sticking with it and for giving your time and for taking the appointment. Thank you so very much, Mr. Rosen. This wasn't an easy day to come to Gordon. And that goes for you too, Ms. Boyle. And again, thank you, Ms. Boyle, for the forthright way you respond to questions. And I'm sure you won't be punished for doing it. Okay. Thank you so much to both of you. Case taken under advisement. Have a good trip back. And court is adjourned until tomorrow morning.